2012 WY 82

**Charles Edward JONES, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S-11-0073.

Supreme Court of Wyoming.

June 14, 2012.

Representing Appellant: Diane Lozano *, State Public Defender; Tina N. Olson *, Appellate Counsel; Kirk A. Morgan *; and Janae E. Ruppert, of Woodhouse Roden, LLC. Argument by Ms. Ruppert.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; Terry L. Armitage; Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Sean C. Chambers, Senior Assistant Attorney General; and John Guyton Knepper, Senior Assistant Attorney General. Argument by Mr. Knepper.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

HILL, Justice.

[¶ 1] Appellant Charles Edward Jones (Jones) robbed and killed Adonnis Whitehead (Whitehead) on July 27, 2009, during a party at a Cheyenne residence. A jury convicted Jones of aggravated robbery and first-degree murder. On appeal, Jones argues that the trial judge erroneously instructed the jury, that there was insufficient evidence to convict him, and that the prosecutor committed cumulative error. We will affirm.

[¶ 2] Jones was charged with one count of first-degree murder in violation of Wyo. Stat. Ann. § 6–2–101(a) (LexisNexis 2011), one count of aggravated robbery with a deadly weapon in violation of Wyo. Stat. Ann. § 6–2–401(c)(ii) (LexisNexis 2011), and one count of conspiracy to commit robbery in violation

---

* Motion to Withdraw filed by Ms. Lozano, Ms. Olson, and Mr. Morgan on June 3, 2011. Order Allowing Withdrawal of Counsel entered on June 3, 2011.

of Wyo. Stat. Ann. § 6–1–303 (LexisNexis 2011). On September 21, 2009, he entered a plea of not guilty to each count and trial was set for January 19, 2010. The district court then began to act upon a series of motions, including the granting of Jones' motion for a new attorney and a subsequent motion for continuance. A jury trial was conducted on October 19–22 and October 25, 2010.

[¶ 3] At trial the State dismissed the conspiracy to commit robbery charge. On October 25, 2010, the jury found Jones guilty of murder in the first-degree and aggravated robbery with a deadly weapon. Jones was sentenced to life imprisonment without the possibility of parole.

## FACTS

[¶ 4] In July of 2009, Jones, his sister, and her husband Dedrick Bell (Bell), moved to Cheyenne. Jones found a job at a lemonade stand at Cheyenne Frontier Days. He used the money he stole from the lemonade stand to buy a large amount of marijuana and sold it in smaller quantities for a profit. He used the profit to rent a room at the Firebird Motel and purchased a van.

[¶ 5] The events of the night of July 26, 2009, which led to Jones' conviction and, ultimately to this appeal, were established through the testimony of a series of witnesses. Dorene Ormeno (Ormeno) and her friend, Jacole Fierro (Fierro), invited Jones to a local party. Jones drove his van to the party. The party was held in the basement of Whitehead's house. The party included two juveniles identified as MG and JH, David Graham, who owned the house, as well as Jones, Ormeno, and Fierro. Whitehead had just received a large amount of money from an insurance settlement. He openly displayed a large sum of cash. Jones expressed interest in the $2 dollar bills that Whitehead displayed and traded Whitehead for some larger bills.

[¶ 6] Jones, in the presence of Whitehead, Ormeno, and Fierro, stated that if he were to rob someone, he would shoot the person in the kneecap. Ormeno and Fierro thought that Jones' comment was "weird." Ormeno also testified that Jones told Whitehead that if he were to steal money from someone, that he would shoot the person in the kneecap rather than face a murder charge. Jones left the party, picked up Bell, and returned. Jones and Bell socialized with Whitehead and others in the basement. Ormeno stepped into the bathroom and when she came out, she saw Jones point a gun at Whitehead and heard Jones tell everyone to get down. Ormeno saw Jones fire a shot at Whitehead and she ran to a back bedroom. MG and JH joined her in the back bedroom where they all hid in a closet. Then she heard two more shots. Before the altercation ended, Jones would shoot the victim five times.

[¶ 7] Fierro testified that during the party Whitehead showed off a stack of $2 bills and that Jones and Whitehead counted the money. She also overheard Jones tell everyone to get on the ground and then he shot Whitehead twice. As Whitehead reached into his pocket to hand Jones the money, Jones shot him a third time. Whitehead dropped the money as he fell to the floor. Fierro testified that the only thing Whitehead dropped was the money and nothing else. Jones picked up the money and fled the house with Bell.

[¶ 8] As JH was coming down the stairs, he saw Jones at the bottom of the stairs with a gun. Jones directed that everyone get down. JH heard Jones order Whitehead to "give me your money." As JH ran towards a bedroom, he heard the gunshots. MG testified similarly—he was walking down the stairs with JH when he heard a voice say, "everybody get down" and heard two gun shots. MG watched as Whitehead motioned toward his pocket and Bell took the money from Whitehead's pocket. According to MG, Whitehead had $500.00 to $1,000.00 in $2 bills.

[¶ 9] David Graham also testified that he also heard several shots, saw Whitehead fall to the floor, and saw Jones with a gun in his hand telling everyone to get down. He also overheard Bell tell Whitehead to "do what he was told" and that Jones was "serious." Jones walked over to Whitehead, reached into Whitehead's pocket, and removed money.

[¶ 10] Bell testified that after Jones picked him up in the van that night, Jones talked about robbing somebody. After Bell arrived at the party, Bell began drinking and socializing with the others in the basement. Bell saw Jones pull out a gun and tell everyone to "get down" and then said to Whitehead, "give me your money." Bell told everyone to do what Jones told them. Bell then saw Whitehead fall to the floor, and Bell ran from the basement and out of the house.

[¶ 11] After crashing the van, Jones and Bell fled on foot. Jones and Bell were arrested at the Round–Up Motel. The police recovered approximately $1,500.00 all in $100 bills in the room, and found approximately $3,000.00 on Jones. Also, at the crime scene, the police recovered a stack of $2 bills from the victim's pocket. There was no evidence of any drug activity.

[¶ 12] Jones testified at trial that he had stolen money from the proceeds of the lemonade stand and pocketed approximately $600.00 per day. He claimed to have bought and sold drugs with the money at a profit. According to Jones' testimony, he agreed to sell Whitehead eleven pounds of marijuana for $9,000.00 at the party. Jones testified that he had left the party to get the marijuana, picked up Bell, and asked Bell to bring his gun.

[¶ 13] According to Jones, upon returning to the party, Whitehead asked everyone to go upstairs, leaving only Jones, Whitehead, Ormeno, and Fierro in the basement. Jones claimed to have handed the marijuana to Whitehead and he inspected it and handed it to Fierro. Whitehead then went to get his money but returned with a gun and demanded that Jones empty his pockets. When Ormeno came out of the bathroom, Jones took advantage of the distraction, pulled his gun, and began firing at Whitehead. Jones testified that Whitehead never walked towards him. Jones claimed that he picked up the marijuana (note that he testified that he had handed the marijuana to Whitehead who had in turn handed it to Fierro) and the money that Whitehead dropped, and both he and Bell fled. Jones contended that he picked up his own money. Jones testified that he did not pick up Whitehead's alleged

weapon. The two men fled on foot after crashing the van.

## ISSUES

[¶ 14] Jones states the issues as follows:

It was plain error for the district court to omit the intent element from the jury instruction defining robbery which caused prejudice to [Jones].

The evidence at trial was insufficient to sustain a conviction of robbery.

[Jones] was denied his right to a fair trial due to the cumulative effect of four acts of prosecutorial misconduct.

## STANDARD OF REVIEW

[¶ 15] The State conceded at oral argument before this Court that the trial judge failed to properly instruct the jury. However, the State argues that this error does not constitute plain error. Due to the failure of Jones to lodge objections to the jury instructions, the plain error standard of review applies. To demonstrate plain error, Jones must show: 1) the record clearly reflects the error; 2) the error was a clear and unequivocal rule of law; and 3) Jones was materially prejudiced by the denial of a substantial right. *Causey v. State*, 2009 WY 111, ¶ 18, 215 P.3d 287, 293 (Wyo.2009); *Vigil v. State*, 859 P.2d 659, 662 (Wyo.1993); *In re Winship*, 397 U.S. 358, 361, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970). All jury instructions given must be read together. *State v. Jackson*, 75 Wyo. 13, 291 P.2d 798 (1955). Instructions must be considered as a whole and not according to isolated phrases and paragraphs. *Hoskins v. State*, 552 P.2d 342 (Wyo.1976).

## DISCUSSION

[¶ 16] The district court instructed the jury as follows:

The elements of the crime of Aggravated Robbery are:

1. On or about the 27th day of July, 2009;

2. In Laramie County, Wyoming;

3. The Defendant, Charles Edward Jones;

4. In the course of committing Robbery;

5. Used a deadly weapon.

[¶ 17] The district court defined "robbery" as: "[T]he stealing, taking *or* carrying away of property of another with infliction of bodily injury upon another person." (Emphasis added.)

[¶ 18] In *Cloman v. State,* 574 P.2d 410, 419 (Wyo.1978) we explained,

> Since robbery is but larceny aggravated by use of force or fear to accomplish the taking of property, then felonious intent required to rob is the same intent common to those offenses that, like larceny, are grouped as theft in [the] penal code.

A significant prospect of violence is involved in robbery. *Id.* Larceny is defined at Wyo. Stat. Ann. § 6–3–402(a) (LexisNexis 2011), which provides: "A person who steals, takes and carries, leads or drives away property of another with intent to deprive the owner or lawful possessor is guilty of larceny." The robbery statute incorporates the larceny definition stating: "A person is guilty of robbery if in the course of committing a crime defined by W.S. 6–3–402 he: (i) Inflicts bodily injury upon another; *or* (ii) Threatens another with or intentionally puts him in fear of immediate bodily injury." Wyo. Stat. Ann. § 6–2–401(a) (LexisNexis 2011) (emphasis added). Robbery, the enumerated felony in the felony murder statute, is a lesser included offense of the crime of aggravated robbery.

> (c) Aggravated robbery is a felony punishable by imprisonment for not less than five (5) years nor more than twenty-five (25) years if in the course of committing the crime of robbery the person:
>
> > (i) Intentionally inflicts or attempts to inflict serious bodily injury; *or*
> >
> > (ii) Uses or exhibits a deadly weapon or a simulated deadly weapon.

Wyo. Stat. Ann. § 6–2–401(c) (LexisNexis 2011) (emphasis added).

[¶ 19] Jones argues that neither instruction reflects the "taking *and* carrying" and the "intent to deprive the owner or lawful possessor" elements of the larceny statute. § 6–3–402(a) (emphasis added).

[¶ 20] Here, there is no question that Jones shot Whitehead to death with a deadly weapon, *i.e.,* a handgun. Thus, the elements of the crime are not disputed. Furthermore, neither is it disputed that Jones did "take and carry away" the money. However, Jones claims that he shot the victim in self-defense, and that the jury was not properly instructed on the larceny portion of the crime of robbery because the instruction did not instruct on the "taking *and* carrying away" element and, further, did not instruct on the "intent to deprive another of another's property" element. Jones argues that he took his *own* money from the victim. Jones also argues that the error effectively lessened the State's burden of proof, and this allowed the jury to convict him without evidence that he had the intent necessary to prove the underlying felony.

[¶ 21] In the recent case of *Jones v. State,* 2011 WY 114, ¶ 14, 256 P.3d 527, 533 (Wyo.2011) we noted:

> [A] trial court's failure to instruct on an element of a crime is not a fundamental error requiring automatic reversal, but rather a trial-type error subject to harmless error analysis. *Granzer* [*v. State,* 2008 WY 118] ¶ 18, 193 P.3d [266] at 271–72 [Wyo.2008]. Further, we held that in the absence of a proper objection the plain error standard of review applies. *Id.,* ¶ 19, 193 P.3d at 272. Under the plain error standard, "failure to instruct on an essential element is not reversible if the element was not contested or 'where evidence of the defendant's guilt is overwhelming' because, under those circumstances, the defendant suffers no prejudice from the violation." *Id.,* ¶ 21, 193 P.3d at 272, quoting *Miller* [*v. State*], 904 P.2d [344] at 349 [ (Wyo.1995) ]. We note, however, that there will be few instances in which these criteria are met, and it will be a rare case in which the omission of an element of a crime from the jury instructions does not cause prejudice to the defendant.

[¶ 22] Jones did not contest at trial the "taking and carrying away" issue that he so disagrees with on appeal. Instead, at trial Jones himself testified that after he shot Whitehead, he grabbed the money and fled the residence. That the instruction given stated "taking *or* carrying" rather than the

proper "taking *and* carrying" is harmless error. The insertion of "or" for "and" was not plain error because it was not a contested issue at trial. Instead, it was admitted to by Jones. The transposing of words did not prejudice Jones.

■ [¶ 23] We reach the same result when addressing the second alleged problem with the jury instructions. Jones argues that it was error that the jury was not instructed on the intent element—that Jones *intended* to take the property of another. It was undisputed, however, that Jones "intended to take" the money. The dispute was whether the money was "property of another." This element was covered in Jury Instruction No. 6, which defined robbery as stealing, taking or carrying away the "property of another." In reaching its verdict, the jury necessarily resolved the factual dispute against Jones. Under these circumstances, the failure to give the intent instruction was harmless. Jones has failed to establish that he was prejudiced by the error

## Sufficiency of the Evidence

[¶ 24] In *Mendicoa v. State,* 771 P.2d 1240, 1243 (Wyo.1989) we noted regarding the sufficiency of the evidence:

It is not our function to weigh the evidence for a determination as to whether or not it is sufficient to establish guilt beyond a reasonable doubt. We have consistently held that even though it is possible to draw other inferences from the evidence presented, it is the responsibility of the jury to resolve conflicts in the evidence. *Broom v. State,* 695 P.2d 640, 642 (Wyo.1985) (citations omitted), quoted in *Roose [v. State],* 759 P.2d [478] at 487 [ (Wyo.1988) ].

*Broom v. State,* 695 P.2d 640, 642 (Wyo. 1985) (citations omitted)[.]

[¶ 25] In *Kenyon v. State,* 2004 WY 100, ¶ 14, 96 P.3d 1016, 1022 (Wyo.2004) (quoting *May v. State,* 2003 WY 14, ¶ 11, 62 P.3d 574, 578 (Wyo.2003) (citations and quotation marks omitted)), we stated:

When reviewing a sufficiency of the evidence claim in a criminal case, we must determine whether a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. We do not consider conflicting evidence presented by the unsuccessful party, and afford every favorable inference which may be reasonably and fairly drawn from the successful party's evidence. We have consistently held that it is the jury's responsibility to resolve conflicts in the evidence. We will not substitute our judgment for that of the jury, ... our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did.

[¶ 26] We have stated that this Court does not review the record evidence to determine if it agrees with the verdict, but rather the critical inquiry of this Court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Ekholm v. State,* 2004 WY 159, ¶ 18, 102 P.3d 201, 206 (Wyo.2004); *Tanner v. State,* 2002 WY 170, ¶ 7, 57 P.3d 1242, 1244 (Wyo.2002). Here, we conclude that a rational and reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, given the conduct of Jones.

[¶ 27] In *Wentworth v. State,* 975 P.2d 22, 26 (Wyo.1999) we stated:

Specific intent is an element of the crime of larceny. *Wetherelt v. State,* 864 P.2d 449, 452 (Wyo.1993). The State must establish that element, just as it must any other element, beyond a reasonable doubt. *Jennings v. State,* 806 P.2d 1299, 1303 (Wyo.1991). The element of specific intent that must be demonstrated in a larceny case is "intent to steal or to deprive the owner of the property * * *." Wyo. Stat. Ann. § 6–3–402(b). Wentworth asserts that the prosecution presented no evidence of intent, but he might more appropriately argue that the prosecution offered no *direct* evidence of intent. The fallacy in Wentworth's claim, however, is that the jury may infer specific intent from circumstantial evidence, such as the conduct of

the defendant. As we said in *Schiefer v. State,* 774 P.2d 133, 135 (Wyo.1989):

> The mind of an alleged offender may be read from his acts, his conduct, his words and the reasonable inferences which may be drawn from the circumstances of the case. To hold otherwise would create an impossible burden in a case requiring a finding of specific intent. [Emphasis in original.]

[¶ 28] As to sufficiency of the evidence, leaving out the conflicting testimony of Jones, the jury had sufficient evidence to convict. The reasonable inference is that Jones intentionally and with premeditation demanded the money from Whitehead, shot and killed him, then took the money from Whitehead's pocket or off the floor, and fled with Bell. Bell stated that Jones was serious about the taking of the money. This was done in the presence of eye witnesses. The statement, "give me your money," at gunpoint is generally sufficient for this Court to conclude that Jones intended to take the victim's money by using deadly force. Furthermore, the testimony was that even though Whitehead complied with the demand, Jones shot Whitehead, who was unarmed, several times. From our review of the record, the jury clearly had sufficient evidence to convict Jones.

## Prosecutorial Misconduct—Standard of Review

[¶ 29] Our standard of review of claims of prosecutorial misconduct is well settled: Where there has been an objection below, claims of prosecutorial misconduct are reviewed under a harmless error standard. W.R.A.P. 9.04 states that "any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded by the reviewing court." *Seymore v. State,* 2007 WY 32, ¶ 17, 152 P.3d 401, 406 (Wyo.2007). W.R.Cr.P. 52(a) and W.R.E. 103(a) contain similar provisions. The test for harmless error is as follows:

> An error is harmful if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had never occurred. To demonstrate harmful error, the defendant must

show prejudice under "circumstances which manifest inherent unfairness and injustice or conduct which offends the public sense of fair play."

*Condra v. State,* 2004 WY 131, ¶ 7, 100 P.3d 386, 389 (Wyo.2004) (quoting *Dysthe v. State,* 2003 WY 20, ¶ 10, 63 P.3d 875, 881 (Wyo. 2003)).

[¶ 30] We decide claims of prosecutorial misconduct by reference to the entire record, and where the claim is one of improper argument, we consider it in the context of the entire argument. *Law v. State,* 2004 WY 111, ¶ 30, 98 P.3d 181, 191 (Wyo.2004). We are reluctant to find plain error in a closing argument "lest the trial court becomes required to control argument because opposing counsel does not object." *Belden v. State,* 2003 WY 89, ¶ 38, 73 P.3d 1041, 1087 (Wyo.2003), *cert. denied,* 540 U.S. 1165, 124 S.Ct. 1179, 157 L.Ed.2d 1212 (2004) (quoting *James v. State,* 888 P.2d 200, 207 (Wyo.1994)). The question is whether, "based on the entire record, a reasonable possibility exists that, in the absence of the error, the verdict might have been more favorable to the accused." *Lopez v. State,* 2004 WY 103, ¶ 56, 98 P.3d 143, 157 (Wyo. 2004). "The burden of establishing prosecutorial misconduct rests upon the appellant who raises the issue." *Lancaster v. State,* 2002 WY 45, ¶ 32, 43 P.3d 80, 94 (Wyo.2002); *Butcher v. State,* 2005 WY 146, ¶ 38, 123 P.3d 543, 554 (Wyo.2005).

[¶ 31] Jones identifies four alleged acts of prosecutorial misconduct, the cumulative effect of which allegedly denied him a fair trial:

1. During voir dire, the prosecutor attempted to define reasonable doubt. He told the jury that the judge would define "reasonable doubt." He also indicated that reasonable doubt was not beyond all doubt but only "beyond a reasonable doubt." Jones argues that the prosecutor was incorrect in saying that the judge would define the term and furthermore that the prosecutor minimized the State's burden of proof.

2. The second alleged error is that the prosecutor stated that the presumption of innocence does not mean Jones is presumed innocent and that evidence would take the

presumption away. Jones objected, contending that it was improper for the prosecutor to vouch for the credibility of the State's evidence.

3. Jones also argues that the prosecutor preconditioned the jury to be more sympathetic to inconsistencies between eye witnesses during voir dire in violation of W.R.Cr.P. 24 stating that is the reason that we have trials when all witnesses do not agree.

4. The prosecutor improperly used rebuttal in his closing to develop a new argument. Jones objected to the comment of a neighbor who said nothing about there being something in Jones' hands when he and Bell ran away and that their laughing as they ran off was cold and callous. The same neighbor also saw Jones and Bell flee the wreckage of the van.

[¶ 32] In *Seymore*, ¶ 19, 152 P.3d at 410 we noted:

[A]ppellant contends that, even if this Court finds each instance of alleged prosecutorial misconduct to have been individually non-prejudicial, the doctrine of cumulative error requires reversal. *See Wilde v. State*, 2003 WY 93, ¶¶ 30–31, 74 P.3d 699, 711–12 (Wyo.2003) ("the doctrine is, indeed, an available tool to address prosecutorial excess"). "Cumulative error" is defined at *Black's Law Dictionary* 582 (8th ed. 2004) as follows: "The prejudicial effect of two or more trial errors that may have been harmless individually. The cumulative effect of multiple harmless errors may amount to reversible error." This Court has considered cumulative error innumerable times. *See, e.g., Hodges v. State*, 904 P.2d 334, 342 (Wyo.1995). Seldom, however, have we reversed a conviction based upon the doctrine. *See, e.g., Schmunk v. State*, 714 P.2d 724, 743 (Wyo. 1986); and *Browder v. State*, 639 P.2d 889, 895 (Wyo.1982).

[¶ 33] In *Dysthe* we state that

[T]he propriety of any comment within a closing argument is measured in the context of the entire argument.... [R]eversal is not warranted unless a reasonable probability exists, absent the error, that the

appellant may have enjoyed a more favorable verdict.

*Id.*, ¶ 22, 63 P.3d at 884 (citing *Mazurek v. State*, 10 P.3d 531, 542 (Wyo.2000)). With the above standards in mind, we turn to this case.

[¶ 34] After a thorough review of the record, we considered each instance of alleged misconduct both singularly and cumulatively. Jones' first instance of alleged error, which we reviewed for plain error, does not meet the standard. Jones argues that the prosecutor was incorrect in saying that the judge would define the term "reasonable doubt" and that by doing so, the prosecutor minimized the State's burden of proof. However, the judge never attempted to define "reasonable doubt," and furthermore, Jones' argument ignores that the instructions actually given to the jury correctly placed the proper burden upon the prosecution to prove its case beyond a reasonable doubt. The jury is presumed to have followed those instructions. *See Brown v. State*, 953 P.2d 1170, 1177 (Wyo.1998).

[¶ 35] Jones' second claim is that the prosecutor's comments regarding the presumption of innocence created a "strong possibility that the jurors [began] the trial with preconceived notions that [Jones] is guilty." After reviewing the record, we agree with the State that Jones' argument relies on selected portions of the prosecutor's comments which, out of context, suggest a different meaning conveyed when looking at the same comments in context. Moreover, any impropriety was corrected by the district court's instruction to the jury regarding the presumption of innocence, an instruction not contested by the defense.

[¶ 36] In his third claim, which is reviewed for plain error because no objection was lodged at trial, Jones argues that during voir dire, the prosecutor improperly commented on inconsistences in the eyewitness testimony that the jury would hear. However, after reviewing the colloquy that occurred during trial, we find no impropriety. The prosecutor never mentioned any particular witness by name, never suggested any witness was more credible than another, and

never asked the jury to sympathize with any witness.

[¶ 37] Finally, Jones argues that over his objection the prosecutor improperly developed new matters in his rebuttal closing that Jones' attorney had not previously addressed. A review of the trial transcript shows that the prosecutor was simply challenging the extensively argued theory of the case that Jones presented in closing and thus his rebuttal was proper.

## CONCLUSION

[¶ 38] After our review, we conclude that there was no prejudice to Jones from the jury instructions, that the evidence at trial was sufficient to sustain a conviction of robbery, and that Jones was not denied his right to a fair trial due to the cumulative effect of any alleged prosecutorial misconduct that may have occurred. Affirmed.