# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 4

OCTOBER TERM, A.D. 2012

January 11, 2013

CARLOS YAMMON PEÑA,

Appellant
(Defendant),

v.

S-12-0072

THE STATE OF WYOMING,

Appellee
(Plaintiff).

---

*Appeal from the District Court of Sheridan County*
*The Honorable John G. Fenn, Judge*

*Representing Appellant:*
Scott Powers, Attorney at Law, Cheyenne, Wyoming

*Representing Appellee:*
Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Theodore R. Racines, Senior Assistant Attorney General; Prof. Darrell D. Jackson, Faculty Director; Emily N. Thomas, Student Director, and Madison M. Brown, Student Intern, of the Prosecution Assistance Program

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    Appellant Carlos Yammon Peña was convicted of felony larceny after taking a pickup truck without the owner's permission. After the verdict was returned and accepted, but before sentencing, he moved for a new trial.  He alleged that members of the venire and/or the jury overheard conversations between the State's witnesses, and that the information to which they were exposed tainted and prejudiced them.  The district court denied his motion, finding that he had waived his right to ask for a new trial by failing to bring the alleged communications with jurors or potential jurors to the court's attention during trial.  On appeal, he challenges that ruling and also contends that there was insufficient evidence of his intent to deprive the owner of the truck of that property as required for a conviction of larceny.  We affirm.

### ISSUES

[¶2]    1.    Is the evidence in the record sufficient to support Mr. Peña's conviction for felony larceny?

2.    Did the trial court err as to the applicable law or abuse its discretion in denying Mr. Peña's motion for a new trial on the ground that he waived his challenge by failing to raise it during trial?

### FACTS

[¶3]    On the morning of May 21, 2010, Jerry Gross awoke at his home in Dayton, Wyoming to find that his pickup truck was missing.  He immediately reported the theft to the Sheridan County Sheriff's Department.   The truck was a maroon 2005 Ford F-250 crew cab  "decked out" with a number of accessories: a grille guard, a chrome tailgate, tinted windows, a sixteen-ton hitch, a spray-on bed liner, and window decals advertising Mr. Gross's business, Cow-Tran.  Mr. Gross had not given anyone permission to use his truck that day.  Sheriff's Deputy Mike Hamilton was unable to locate the vehicle, and he therefore reported it as stolen to the National Crime Information Center (NCIC) database.

[¶4]    Mr. Peña was a nineteen-year-old Sheridan College student at the time the pickup truck was taken.   He lived in Dayton, while his off-and-on girlfriend Kaitlyn lived in Rapid City, South Dakota.   At trial, his counsel described this relationship as "a love interest that he had at that time, as many 19-year-old love interests go, that waned after some period of time . . . ."

[¶5]    Mr. Peña normally visited Kaitlyn often, but had not seen her in some time because his own pickup truck had broken down, leaving him with no transportation.  Trial counsel acknowledged that Mr. Peña took Mr. Gross's truck so he could visit Kaitlyn, and that he did not have the owner's permission to take the truck.

1

[¶6]    After taking the pickup, Mr. Peña traveled to Rapid City, where he stayed intermittently with Kaitlyn and her mother Kim Heuer for about a month.  He drove the truck during this time frame, but he removed company decals shortly after arriving in Rapid City.   Ms. Heuer testified that he told her and her daughter that the vehicle belonged to his mother.   He eventually left in the truck to visit his father in Covington, Louisiana.  According to Ms. Heuer, the vehicle was clean and was not damaged during the time Mr. Peña was in Rapid City.

[¶7]    Ms. Heuer testified that after Mr. Peña's departure, her daughter Kaitlyn noticed an email confirmation for a Craigslist advertisement sent to Mr. Peña's email address. She was able to access Mr. Peña's email account because his password was stored on her computer.  In the advertisement, Mr. Peña listed the following parts of the truck for sale: the sixteen ton hitch, the chrome tailgate, and the aftermarket grille guard.  The advertisement, which Kaitlyn saved, stated that "[t]hey came [on] my 2005 Ford F250 . . . ." A printout of the advertisement was received in evidence at trial.

[¶8]    On August 30, 2010, the St. Tammany Parish, Louisiana Sheriff issued a "Be On The Lookout" (BOLO) notice directing law enforcement to stop a maroon Ford F-250 with Wyoming license plates.  The BOLO related to a different possible crime which was not identified to the jury.   Corporal Robert Edwards of the St. Tammany Parish Sheriff's Office located the vehicle and stopped it.   This was not particularly difficult, because Corporal Edwards sees few vehicles with Wyoming plates in St. Tammany Parrish.

[¶9]    Mr. Peña was driving the pickup truck, and he readily identified himself, but he was unable to produce a driver's license, registration, or proof of insurance.   When Corporal Edwards asked if the truck belonged to him, he claimed that it belonged to his boss, who worked in construction.   Corporal Edwards ran the license plate through the NCIC database, confirmed that the truck was stolen, and placed Mr. Peña under arrest.

[¶10]  Deputy Cecil Hoyt, who was also employed by the St. Tammany Parrish Sheriff, responded to the scene and relieved Corporal Edwards.   Mr. Peña admitted to Deputy Hoyt that the truck was stolen, but this time claimed that it belonged to his mother's fiancé.  He did not mention any plan to return it to its owner.  When Deputy Hoyt asked him about being caught with the truck, he responded "I made it this far, didn't I?" Deputy Hoyt testified at trial that Mr. Peña had a cocky and arrogant demeanor during the conversation.

[¶11]  Mr. Gross eventually recovered the truck in March of 2011, with some assistance from Mr. Peña's mother.   Its license plates, vehicle identification number (VIN), and registration documents were unaltered.  The truck was in good condition but was missing its grille guard, a toolbox, and the Cow-Tran decals.  Mr. Peña had put around 14,000 miles on the vehicle during his odyssey.

[¶12] After his arrest in Louisiana, Mr. Peña was extradited to Sheridan County. He was charged with one count of felony larceny in violation of Wyo. Stat. Ann. § 6-3-402(a)(c)(i), to which he pled not guilty.

[¶13] Jury trial began on July 27, 2011, at 9:00 a.m. Voir dire commenced after the trial judge gave an explanation of the trial process and an initial admonition. At 10:07 a.m., the court recessed to chambers for what the judge predicted would be about half an hour, and the prospective jurors were told that they were welcome to go outside the courtroom into the hallway. Counsel then made challenges for cause and peremptory challenges in chambers. The trial transcript does not identify when the trial resumed in open court. Once the proceedings resumed, a jury of twelve and one alternate was seated and sworn, and the rest of the venire was excused.

[¶14] Following opening statements, the State called a total of five witnesses: Mr. Gross, Deputy Hamilton, Ms. Heuer, Corporal Edwards, and Deputy Hoyt. Their testimony was consistent with the summary set forth above. The State rested, and Mr. Peña did not move for judgment of acquittal under Wyoming Rule of Criminal Procedure 29. He then called Gail Sistrunk, his mother, as his only witness. Her testimony was generally consistent with that of the State's witnesses. The State did not put on a rebuttal case.

[¶15] An instruction conference had been held earlier, but the court excused the jury for a break after the evidence was closed, and asked if there were any proposed changes or modifications to the instructions based on Ms. Sistrunk's testimony. After learning that there were none, the court asked counsel if the parties had anything else they wanted to have considered, and both attorneys indicated they did not. The court then instructed the jury on the elements of felony larceny, including the requirement that the State prove intent to deprive the owner or lawful possessor of property worth $1,000.00 or more beyond a reasonable doubt.

[¶16] The State argued that the evidence showed that Mr. Peña intended to deprive the owner of the truck for the following reasons:

- He had the vehicle for three months by the time it was recovered in Louisiana.
- He removed the Cow-Tran decals to make the vehicle less easily identifiable.
- He inconsistently claimed the truck belonged to his mother, his boss, and his mother's fiancé.
- He probably sold the truck's grille guard through the ad placed on Craigslist, and tried to sell other parts by the same means. A toolbox was missing from the truck when it was located, suggesting that it might also have been sold on Craigslist.
- He told Deputy Hoyt, "I made it this far," suggesting that he would have kept the truck as long as he could.

- He put 14,000 miles on the vehicle.

[¶17] Mr. Peña's counsel first emphasized the State's burden to prove each essential element of the offense charged beyond a reasonable doubt. He then argued that the evidence only showed misdemeanor unauthorized use or "joyriding" for the following reasons:

- He only had the truck for 90 days.
- He did not remove the Wyoming license plates from the vehicle nor alter its VIN.
- He did nothing to change the truck's appearance other than removing the Cow-Tran decals.
- He did not hide or dispose of the vehicle.
- His intent was just to visit his girlfriend, and then his father.
- The evidence supports a conclusion that Mr. Peña intended to make unlawful temporary use of the vehicle, but not to deprive the owner of it as required by statute.

[¶18] The jury found Mr. Peña guilty of felony larceny. Its verdict was accepted, and the jury was discharged without objection from the parties. The entire trial took just one day.

[¶19] Mr. Peña retained a different attorney for post-trial motions and this appeal. His new counsel filed a timely motion for a new trial based upon "various issues surrounding the jury, its selection, its composition and certain communications that may have been heard by jurors and/or potential jurors." The State responded that "[n]ot only are Defendant's assertions based on rank speculation and conjecture, his failure to raise these issues in a timely manner constitutes a waiver of his right to now seek judicial remedy." The district court held an evidentiary hearing on the motion on October 5, 2011.

[¶20] At that hearing, the defense called private investigator Timothy Soule as its first witness. Mr. Soule testified that he came to the Sheridan County courthouse at around 9:00 in the morning on the day of trial because he was a private bail enforcement agent assigned to monitor Mr. Peña. Cross-examination established that Mr. Soule worked with Ms. Sistrunk, that he had done some investigative work on the case, and that he was also there in a professional capacity related to Mr. Peña's defense.

[¶21] Mr. Soule testified that he remained in the hallway during jury selection. According to him, a number of Sheridan County law enforcement officers were also there, including Lieutenant Mark Conrad, Deputy Steve Matheson, and Sheriff Dave Hoffmeier.

4

[¶22]   After an hour, a group of people came out of the courtroom into the hallway where the law enforcement officers were.  Mr. Soule believed this group of people to be the panel of prospective jurors.  He testified that the Louisiana law enforcement officers talked with the Sheridan County officers about apprehending Mr. Peña and whether he had admitted to them that the truck had been stolen.  He testified that prospective jurors were in a position to hear what the law enforcement officers said.  Mr. Soule also indicated that a tall, bald man with glasses and a goatee arrived and suggested that Mr. Peña's bond would probably be revoked.   The law enforcement officers nodded in response to this comment, but stopped talking once they appeared to realize that potential jurors were within earshot.

[¶23]   Mr. Soule testified that he reported what he had observed to Ms. Sistrunk and the Clerk of Court.  He claimed the clerk seemed shocked at this turn of events, and that she told him that she would talk to the judge.  Mr. Soule indicated that Ms. Sistrunk told him that he should advise Mr. Peña's attorney of what he had seen.  He testified he did in fact tell Mr. Peña's attorney of what he had seen and heard during the trial, although the exact time of this conversation is not established in the motion hearing record.[1]

[¶24]   The defense then called Ms. Sistrunk.  She testified that she did not completely see what happened because she was on the opposite side of the hallway.  She also testified that she used her cell-phone to take a picture of the group, including the bald man described by Mr. Soule, after he told her what had happened.  The picture was not introduced as an exhibit, and is not part of the appellate record.  Ms. Sistrunk testified that she recognized the bald man as Sheridan County Attorney Matthew Redle, who was present at the motion hearing.  She also testified that she reported what Mr. Soule had told her to Mr. Peña's attorney during the trial.

[¶25]   After the defense rested, the State called Mr. Redle as its first witness.  He testified that his review of courthouse surveillance videos indicated that he was in the courthouse (where the County Attorney's office is located) on the day of trial.  He did not recall going to the courthouse that day until about 3:00 in the afternoon.  He testified that he did go to the floor on which the courtroom is located  and speak with law enforcement officers there, but said that he only made small talk with the Louisiana sheriff's deputies about where they were staying.  He recalled that the empanelled jury was in the courtroom at the time.  He also indicated that the cell-phone photo taken by Ms. Sistrunk was not in fact one of him, and that he would not have been able to revoke Mr. Peña's bond regardless of whether he was in the courthouse that day or not.

---

[1] Presumably the conversation occurred some time after the attorneys finished exercising challenges for cause and peremptory challenges, because they would have been in chambers at the time of the occurrence.

[¶26] The State also called Lieutenant Conrad. He testified that he and Sheriff Hoffmeier arrived at the courthouse at around 8:00 in the morning. They waited outside the courtroom during the start of the trial, and the Louisiana deputies did not arrive until about 10:00 a.m. Mr. Soule and Mr. Sistrunk were also in the hallway outside the courtroom at this time. He testified that he only made small talk with the other officers, and they did not talk about anything related to the case in the presence of potential jurors as claimed by Mr. Soule.

[¶27] After hearing the evidence, the district judge observed that the critical issue was trial counsel's failure to timely notify the court of any allegedly improper communications with the jury. The Court later issued a written ruling denying Mr. Peña's motion, finding that "the grounds identified in his written motion [were] waived by his failure to raise those identified issues during the pendency of trial."

[¶28] On November 30, 2011, Mr. Peña was sentenced to a term of imprisonment of not less than two and a half nor more than three and a half years. The district court recommended to the Wyoming Department of Corrections that he be allowed to participate in the Youthful Offender Program commonly known as Boot Camp. After his admission to and successful completion of that program, the court suspended the balance of his prison term in favor of a three-year period of supervised probation on a stipulation of the parties. This appeal was timely perfected.

**STANDARD OF REVIEW**

[¶29] Mr. Peña argues that the evidence presented by the State at trial was insufficient to show that he had the intent to deprive the owner of the vehicle involved in this case as that term is used in the governing statute.[2] Our standard of review for sufficiency of the evidence in criminal cases is well-established:

---

[2] Trial counsel did not move for judgment of acquittal at any stage of the proceedings. In older cases, we held that a defendant's failure to move for a judgment of acquittal limited later claims of insufficient evidence to review for plain error. *See, e.g.*, *Griswold v. State*, 994 P.2d 920, 928 (Wyo. 1999) ("Griswold failed to move for a judgment of acquittal on Count V at trial; therefore, we review his claim [of insufficient evidence] under the plain error standard." (citing *Farbotnik v. State*, 850 P.2d 594, 603–04 (Wyo. 1993))). We recently abandoned this approach, noting the difficulties in reviewing an overall record for plain error:

> Historically, this Court has paid lip service to the concept of giving only the plain error rule's limited review to sufficiency of the evidence issues, but in practice we have performed our usual sufficiency of the evidence analysis whether or not a motion for judgment of acquittal was made in the trial court. In truth, the plain error standard does not lend itself to application where the issue is sufficiency of the evidence. One, there is no "incident" that is alleged to be error, and no objection can be made to the failure to have presented evidence on one or more of the elements of the crime. Two, the "clear and unequivocal rule

6

[T]his Court examines all the evidence and accepts as true the State's evidence and all reasonable inferences that can be drawn from it. The Court does not consider conflicting evidence presented by the defense, nor does it substitute its judgment for that of the jury. Evidence is reasonably sufficient if a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt.

*Venegas v. State*, 2012 WY 136, ¶ 13, 287 P.3d 746, 749–50 (Wyo. 2012) (citing *Anderson v. State*, 2009 WY 119, ¶ 6, 216 P.3d 1143, 1145 (Wyo. 2009)) (internal citations omitted) (quotation marks omitted). This standard applies to our review of both direct and circumstantial evidence. *Jones v. State*, 2011 WY 114, ¶ 19, 256 P.3d 527, 534 (Wyo. 2011).

[¶30] Mr. Peña also argues that the district court erred in denying his motion for a new trial based on the alleged exposure of jurors to information which may have been prejudicial and inadmissible at trial. This issue implicates two different standards. The district court determined as a matter of law that a challenge based on exposure of jurors to prejudicial information is waived if known to a defendant or his counsel during trial but not raised at that time. The standard of review for this legal issue is *de novo*. *See Short v. State*, 2009 WY 52, ¶ 8, 205 P.3d 195, 198 (Wyo. 2009) (stating that we conduct a *de novo* review of a district court's legal conclusions following an evidentiary hearing) (quoting *Odhinn v. State*, 2003 WY 169, ¶¶ 13–15, 82 P.3d 715, 719–20 (Wyo. 2003)).

[¶31] The trial judge also had to decide whether the facts presented at the evidentiary hearing on the new trial brought the case under the waiver rule he ultimately applied. Wyoming Rule of Criminal Procedure 33(a) generally governs motions for new trial in

---

of law" element of plain error analysis does not "fit" a sufficiency of the evidence analysis. Third, the proposition that a defendant's guilt must be proved with competent evidence bearing upon each of the crime's elements always involves a fundamental right. Finally, a defendant is always prejudiced if he is found guilty and the evidence is not sufficient to establish his guilt. For these reasons, we hereby abandon any adherence to the plain error rule where sufficiency of the evidence is the issue.

*Garay v. State*, 2007 WY 130, ¶ 2 n.1, 165 P.3d 99, 101 n.1 (Wyo. 2007). *See also Najera v. State*, 2009 WY 105, ¶ 5 n.3, 214 P.3d 990, 992 n.3 (Wyo. 2009) (describing how an inadequate judgment for acquittal did not preclude appellate review of the sufficiency of the evidence); *Haynes v. State*, 2008 WY 75, ¶ 16, 186 P.3d 1204, 1208 (Wyo. 2008) ("We apply these standards [of sufficiency of the evidence] even when no objection to the alleged error is made at trial." (citing *Garay*, ¶ 2 n.1, 165 P.3d at 101 n.1)). We therefore review Mr. Peña's claim of insufficient evidence on the merits despite the absence of a motion for judgment of acquittal.

criminal cases. W.R.Cr.P. 33(a). The rule permits a court to grant a defendant's motion for a new trial "if required in the interest of justice." *Id.* We recently described the standard of review for denial of a new trial as follows:

> [W]hen a motion for . . . new trial is presented, the district court considers the motion and grants it if justice so requires . . . . [I]f the motion is denied, and that denial is appealed, we review that denial for an abuse of discretion . . . . [A]buse of discretion has occurred where the district court could not have reasonably concluded as it did.

*Yellowbear v. State*, 2008 WY 4, ¶ 68, 174 P.3d 1270, 1295–96 (Wyo. 2008) (citation omitted); *accord Barker v. State*, 2006 WY 104, ¶ 12, 141 P.3d 106, 112 (Wyo. 2006); *Davis v. State*, 2005 WY 93, ¶ 44, 117 P.3d 454, 470–71 (Wyo. 2005); *Robinson v. State*, 2003 WY 32, ¶ 18, 64 P.3d 743, 748 (Wyo. 2003); *Flaim v. State*, 488 P.2d 153, 154 n.2 (Wyo. 1971).

[¶32] The appellant bears the burden of proving an abuse of discretion. *Warren v. State*, 809 P.2d 788, 790–91 (Wyo. 1991) (citing *Lacey v. State*, 803 P.2d 1364, 1370 (Wyo. 1990)). We have defined judicial discretion as "a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Smith v. State*, 2012 WY 130, ¶ 5, 286 P.3d 429, 431 (Wyo. 2012) (quoting *Penner v. State*, 2003 WY 143, ¶ 7, 78 P.3d 1045, 1047 (Wyo. 2003)). In recognition of that discretion, we give due regard to the trial judge's ability to assess the credibility of witnesses. *See Lawrence v. City of Rawlins*, 2010 WY 7, ¶ 13, 224 P.3d 862, 869 (Wyo. 2010) (explaining how "[d]ue regard is given to the opportunity of the trial judge to assess the credibility of the witnesses" in a bench trial (quoting *Snelling v. Roman*, 2007 WY 49, ¶ 8, 154 P.3d 341, 345 (Wyo. 2007))). The district court is free to accept or reject testimony as part of its discretion under Rule 33(a), even if such testimony is uncontradicted. *Flaim,* 488 P.2d at 154 n.2.

[¶33] The State asserts that we should apply the plain error standard, as the events in question were not brought to the attention of the district court during trial. We agree with the State that we generally review cases for plain error if the defendant does not raise an issue at trial. *See Kidwell v. State*, 2012 WY 91, ¶ 10, 279 P.3d 540, 543 (Wyo. 2012). If we were asked to decide whether the district court should have inquired into and acted upon potentially improper communications which came to its attention during the trial, despite no request from the defense that it do so, we might apply that standard. *See United States v. Gianakos*, 415 F.3d 912, 922 (8th Cir. 2005) (reviewing a district court's decision to not inquire into alleged juror misconduct for plain error).

[¶34]  However, it is clear from Mr. Peña's brief that he does not challenge the allegedly improper communications as an independent trial error.   Instead, he challenges the district court's denial of his motion for a new trial after the verdict.  Under the circumstances we will determine whether the district court applied the correct principle of law and whether it abused its discretion in finding that Mr. Peña's counsel knew of the communications in question at a time when they could have been brought to the court's attention during the trial.  *See Benjamin v. State*, 2011 WY 147, ¶ 29, 264 P.3d 1, 9 (Wyo. 2011) ("The proper standard of review must be adapted to fit the context in which the question is presented."); *Barker*, ¶ 12, 141 P.3d at 112 ("Generally, a district court's decision regarding a motion for a new trial is reviewed for an abuse of discretion.") (citation omitted).

## DISCUSSION

### A.    Sufficiency of the Evidence

[¶35]  Wyoming Statute § 6-3-402(a) provides that "[a] person who steals, takes and carries, leads or drives away property of another with intent to deprive the owner or lawful possessor is guilty of larceny."  Wyo. Stat. Ann. § 6-3-402(a) (LexisNexis 2011).  We recently noted that "[t]he law of theft and larceny has been recodified and its language has been simplified, but proof of the specific crime charged must still be made and tested against the beyond-a-reasonable-doubt standard."  *Powell v. State,* 2012 WY 106, ¶ 6, 282 P.3d 163, 164–65 (Wyo. 2012) (citation omitted).   "In order to prove larceny, the State must prove that the defendant intended to . . . deprive the rightful owner of the property."  *Swanson v. State*, 981 P.2d 475, 479 (Wyo. 1999); *see also* Wyo. Stat. Ann. §6-3-401(a)(ii) (LexisNexis 2011) (providing the statutory definition of "deprive").

[¶36]  The jury was informed of the essential elements necessary to establish felony larceny in Instruction No. 6:

> The elements of the crime of Larceny, as charged in this case are:
>
> 1.  On or about the 21st day of May, 2010;
> 2.  In Sheridan County, Wyoming;
> 3.  The Defendant, Carlos Yammon Peña;
> 4.  Stole, took and carried, led or drove away;
> 5.  Property of another of the value of $1,000 or more;
> 6.  With intent to deprive the owner or lawful possessor.

> If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.
>
> If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

Jury Instruction No. 7 provided the statutory definition of "deprive":

> "Deprive" means:
>
> a.  To withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value or with intent to restore only upon payment of reward or other compensation; or
>
> b.  To dispose of the property so as to make it unlikely that the owner will recover it.

[¶37]  Over the State's objection, the Court also instructed the jury as to the lesser-included misdemeanor of unauthorized use of a vehicle under Wyo. Stat. Ann. § 31-11-102 (LexisNexis 2011).  The offense of unauthorized use requires only that the State prove beyond a reasonable doubt that the accused had the "purpose of temporarily making use of the vehicle," as opposed to requiring it to prove that the defendant had the intent to "deprive" the owner of the property as it must for felony larceny. *See id.*  Mr. Peña does not dispute that the foregoing instructions were a correct statement of the law applicable to this case.

[¶38]  Only the sufficiency of the evidence to prove the sixth element of Instruction No. 6, intent to deprive, was disputed at trial or on appeal.  Mr. Peña characterizes his actions as "joyriding" or unauthorized use, and argues the evidence was insufficient for the jury to find the required intent to deprive the vehicle's owner of his property.  He concedes that the evidence was sufficient to support a misdemeanor conviction for unauthorized use of a vehicle.

[¶39]  As Instruction No. 7 indicated, the statutory definition of "intent to deprive" includes an intent "[t]o withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value or with intent to restore only upon payment of reward or other compensation." Wyo. Stat. Ann. § 6-3-401(a)(ii)(A) (LexisNexis 2011).  A jury may properly infer larcenous intent from circumstantial evidence, such as the defendant's words and conduct. *Jones*, ¶ 27, 278

10

P.3d at 735–36 (quoting *Wentworth v. State,* 975 P.2d 22, 26 (Wyo. 1999)). "The wrongful taking of another's property with no apparent intention of returning it, and in the absence of any explanatory circumstances" can support a finding of intent to deprive. *Wells v. State*, 613 P.2d 201, 204 (Wyo. 1980) (citing *State v. Jackson*, 420 P.2d 270, 272 (Ariz. 1966)). The State is not required to produce direct evidence of the defendant's intent to deprive, because that would impose a nearly impossible burden to satisfy in many cases. *See Jones*, ¶ 27, 278 P.3d at 735–36, (quoting *Schiefer v. State*, 774 P.2d 133, 135 (Wyo. 1989)).

[¶40] Two other Wyoming cases address the issue of sufficiency of evidence to prove intent to deprive. In *Wetherelt v. State*, 864 P.2d 449 (Wyo. 1993), the defendant broke into the victim's unoccupied trailer and took a number of items of personal property. She listed some of them in an advertisement for a garage sale, returned some to the victim, and refused to return others. We found this course of conduct sufficient to support a reasonable inference of intent to deprive the victim of his property. *Id.* at 450–52.

[¶41] In *Merchant v. State*, 4 P.3d 184 (Wyo. 2000), a used car salesman sold a truck to the victim but withheld the truck's title for more than five months. The victim was unable to use the truck for that period. We held that "in instances of temporary deprivations similar to the ones in this case, the jury can reasonably find intent to deprive." *Id.* at 191 (citing *Brett v. State*, 961 P.2d 385, 391 (Wyo. 1998)). *See also Thornton v. State*, 689 S.E.2d 361, 367–68 (Ga. Ct. App. 2009) (finding sufficient evidence of larcenous intent where the defendant, a mechanic, kept a customer's truck and used it as his own for over a year).

[¶42] The question the jury had to decide in this case was not whether Mr. Peña succeeded in keeping the vehicle permanently or for long enough to appropriate a major portion of its value, but whether he intended to do so. Whether he was likely to be successful in that effort in a world of instant communications and technological law enforcement capabilities was likewise not the issue that had to be decided. The evidence presented by the State showed that Mr. Peña removed decals connecting the truck to the owner's business shortly after taking it.[3] The record also indicates that he later attempted

---

[3] Other courts have viewed similar acts of concealment as sufficient evidence to support a reasonable inference of the requisite intent to deprive. *See, e.g.*, *Smith v. State*, 575 S.W.2d 677, 681 (Ark. 1979) ("Evidence of concealment of the property may constitute evidence of a felonious intent [to deprive the owner of property], depending upon the surrounding circumstances." (citing *State v. Aten*, 457 P.2d 89 (Kan. 1969); *Byrd v. State*, 173 So. 282 (Miss. 1937); *Commonw. v. Dock*, 21 A.2d 429 (Pa. Super. Ct. 1941)); *People v. Quisenberry*, 311 P.2d 99, 103 (Cal. 2d Dist. Ct. App. 1957) (describing how the concealment of a vehicle's license plates supported a "reasonable inference that the taker intended to deprive the owner of possession.") (citation omitted); *Maddox v. State*, 38 So. 2d 58, 59 (Fla. 1948) (describing how a jury may infer larcenous intent from "an effort to conceal the possession of another's property" (quoting *Long v. State*, 11 Fla. 295, 297 (Fla. 1866))).

to sell some of the truck's parts on Craigslist, and may have succeeded in that attempt, as the truck's grille guard and a toolbox were missing when it was recovered.

[¶43] Trial testimony indicated that Mr. Peña told his girlfriend's mother that the truck belonged to his mother. When he was questioned in Louisiana, he told Corporal Edwards that it belonged to his boss and denied that it was stolen. Shortly thereafter, he told Deputy Hoyt that the truck was stolen but that it belonged to his mother's fiancé. A reasonable jury could believe that these statements demonstrated an intent to avoid identification of the vehicle's owner so as to permit Mr. Peña to keep the vehicle as long as possible. That conclusion would be consistent with an intent to deprive.

[¶44] There is no dispute that when he was apprehended, Mr. Peña had kept the truck for three months, that he had put approximately 14,000 miles on it, and that he never made any effort to return it to its owner or advise him of its location. By all accounts, he maintained the vehicle well, from which the jury could infer that he intended to keep the vehicle in good condition so that he could continue to use it. When viewed in the light most favorable to the State, the evidence presented was sufficient to permit a jury to reasonably conclude that Mr. Peña intended to deprive the pickup truck's owner of his property as that term is defined in Wyoming Statute § 6-3-401(a)(ii)(A), and that the deprivation was temporary only because he was caught.

## B.    Motion for a New Trial

[¶45] Mr. Peña's motion for a new trial alleged that witnesses for the State talked about aspects of the case in front of prospective jurors who might have been seated as trial jurors. There is a factual dispute as to whether these events took place at all, or if they did, precisely when they occurred. The record suggests that if the events did occur as claimed by Mr. Soule and Ms. Sistrunk, they took place while the attorneys were making their challenges for cause and peremptory challenges in chambers, before the jury was empanelled.

[¶46] The district court did not find explicitly whether the conversations took place as claimed by Mr. Peña, or whether they did not as suggested by the State. It found instead that "after appropriate inquiry of the record and persons present . . . [t]hat the Defendant's Motion for a New Trial, on the ground identified in his written motion, was waived by his failure to raise those identified issues during the pendency of trial." The only factual finding necessary to support this conclusion would have been that the events were reported to defense counsel at a time when they could have brought them to the trial court's attention. The issues are therefore whether the district court correctly identified the applicable rule of law, and whether it abused its discretion by deciding that the issue could have been raised during trial.

[¶47] This Court long ago held that claims of juror misconduct in civil cases are waived if known and not raised at trial. *See Hanson v. Shelburne*, 23 Wyo. 445, 450, 153 P. 899, 900 (1915) ("It is the well-settled rule that a party having knowledge of misconduct of a juror or of the opposite party during the progress of the trial and before it has been submitted to the jury, must promptly call it to the attention of the court or it is waived.").[4] In criminal cases, we have also held that the "failure to challenge a juror, and then later acceptance of the panel at trial, waives any objection to the service of a particular juror." *Benjamin*, ¶ 30, 264 P.3d at 9 (quoting *Kerns v. State*, 920 P.2d 632, 635 (Wyo. 1996)).

[¶48] "In construing Wyoming rules of procedure, where Wyoming and federal rules of procedure are similar, we have repeatedly looked to federal cases construing the federal rule as persuasive authority." *Johnson v. State*, 2009 WY 104, ¶ 14, 214 P.3d 983, 986 (Wyo. 2009) (citing *Bird v. State*, 901 P.2d 1123, 1129 (Wyo. 1995)). The relevant portion of Wyoming Rule of Criminal Procedure 33(a) is nearly identical to its federal counterpart. *Compare* F.R.Cr.P. 33(a) ("Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."), *with* W.R.Cr.P. 33(a) ("The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice."). Federal precedent accordingly has "great persuasive weight" to the issue before us. *See Bird*, 901 P.2d at 1129 ("In our interpretation of our Wyoming Rules of Criminal Procedure having their source in the federal rules, we afford great persuasive weight to federal precedent.").

[¶49] A review of federal precedent reveals a clear majority rule as to waiver of the right to a new trial in cases of juror misconduct. If the defendant knows of possible juror misconduct during trial but does not bring it to the attention of the trial court before the verdict is returned, he waives the right to a new trial on that ground.[5] Requiring a litigant

---

[4] In *Hanson*, the plaintiff won a judgment for damages for malicious assault and battery against the defendant. *Id.* at 447, 153 P. at 899. The defendant sought reversal of the judgment, stating that "certain members of the jury were guilty of misconduct, by reason of their association with and entertainment by the plaintiff during the trial and before said cause was submitted to the jury." *Id.* The Court found that the plaintiff did play several games of pool and tenpins during the pendency of trial, but that the defendant knew of this and failed to object during trial. It held that the defendant's inaction operated as a waiver of later claims of juror misconduct. *Id.* at 449–50, 153 P. at 900.

[5] *See, e.g.*, *United States v. Thai*, 29 F.3d 785, 803 (2d Cir. 1994) ("We are particularly loath to second-guess the actions of the district court when the defendant has failed to object at trial, lest the defendant be permitted to 'wait to hear the verdict before contesting the impartiality of the jury and then attack the court's refusal to investigate his allegation.'" (quoting *United States v. Edwards*, 696 F.2d 1277, 1282 (11th Cir. 1983) (per curiam))); *United States v. Costa*, 890 F.2d 480, 482 (1st Cir. 1989) ("We have held previously that a defendant's failure to raise a claim of juror bias until after trial, when the issue of potential bias was known by the defendant during trial, amounts to a waiver of the claim."); *United States v. Bolinger*, 837 F.2d 436, 438-39 (11th Cir. 1988) ("[A] defendant cannot learn of juror misconduct during the trial, gamble on a favorable verdict by remaining silent, and then complain in a post-verdict motion that the verdict was prejudicially influenced by that misconduct." (quoting *United States v. Jones*, 597 F.2d 485, 588 n.3 (5th Cir. 1979))); *United States v. Ramsey*, 726 F.2d 601, 604 (10th Cir. 1984)

who knows of an impropriety related to the jury to bring it to the trial court's attention assures that the trial judge has a chance to determine what has occurred, assess its impact, and perhaps replace a juror with an alternate, thus avoiding a costly mistrial. Any other rule might "allow defendants to sandbag the court by remaining silent and gambling on a favorable verdict, knowing that if the verdict went against them, they could always obtain a new trial by later raising the issue of juror misconduct." *United States v. Costa*, 890 F.2d 480, 482 (1ˢᵗ Cir. 1989) (citation omitted).

[¶50] This is not a case of juror misconduct, but rather a question of whether jurors or potential jurors may have been exposed to information which could have improperly influenced them. There is no reason to apply a different rule than that employed in juror misconduct cases. If the impropriety becomes known to a litigant or to his attorney during trial, the trial court should have an opportunity to determine what has occurred and to address it appropriately. We therefore hold that if a defendant or his counsel knows of potential impropriety in connection with the jury during trial, and fails to object before the return of the verdict, he waives any right to a new trial based on that impropriety.

[¶51] The record in this case demonstrates how beneficial the above rule could be. If the conversations in question – as it most strongly appears from the record – occurred before the jury was empanelled and while challenges were being made, the trial judge would have had a number of options to explore before empanelling the jury. At that point, he might have: (1) questioned potential jurors in chambers as to whether they had in fact heard the conversations claimed to have taken place; (2) determined whether any statements made were prejudicial; and (3) taken some action to assure that jurors not exposed to prejudicial information were seated.

---

("When the party is aware of the alleged misconduct during the trial, however, he or she may not raise the issue for the first time after trial.") (citing *United States v. Carter*, 433 F.2d 874, 876 (10th Cir. 1970)); *United States v. Dean*, 667 F.2d 729, 734 (8th Cir. 1982) ("[A]ppellant, by not bringing the question of juror misconduct to the attention of the trial court before the verdict was returned, thereby waived his right to a new trial."); *Gray v. Hutto*, 648 F.2d 210, 212 (4th Cir. 1981) (holding an appellant waived his right to a new trial where his attorney was aware of a potentially improper conversation with a juror but failed to object during trial). *See also* Annotation, *Knowledge by Defendant or his Attorney, before Return of Verdict in Criminal Case, of Misconduct in Connection with Jury after their Retirement as Affecting Right to New Trial or Reversal*, 96 A.L.R. 530 (2011) (citing a number of state and federal cases in support of the "general rule . . . that misconduct on the part of anyone in connection with the jury . . . is not available after the return of the verdict, as a ground for a new trial . . . where it was known to the defendant or his counsel before the return of the verdict"); 3B Charles Alan Wright et al., *Federal Practice & Procedure, Criminal Procedure* § 842 (3d ed. 2004) (explaining how a defendant "cannot speculate with the jury by letting error go by unremarked and then seek a new trial on the basis of the error if the verdict is unfavorable to him"); 27 Charles Alan Wright et al., *Federal Practice & Procedure, Evidence* § 6076 (2d ed. 2007) ("[A] party may waive its objections where it was aware of jury misconduct during the trial and waited until after the verdict to complain.").

[¶52] If the trial judge learned of the alleged event after the jury was sworn, he might still have been able to salvage the trial by replacing an affected juror with an alternate if the information was sufficiently prejudicial. If a mistrial had to be declared, it would have benefitted the litigants and witnesses to have the court do so before the trial concluded. Requiring such challenges to be raised during trial allows counsel and the court to investigate occurrences while memories are fresh, and also minimizes the possibility that claims of improper influence have been fabricated after an unfavorable outcome. It also avoids the possibility of inconveniencing jurors who have been discharged by requiring them to return to court to be interrogated weeks after they have completed their service.

[¶53] At the motion hearing, Mr. Soule and Ms. Sistrunk both testified that they notified trial counsel of the communications claimed to be improper during the trial, establishing that there was an opportunity to raise the issue. During the trial, the court repeatedly offered the parties opportunities to make objections or to raise issues outside the presence of the jury, and the record is barren of any reference to the alleged event. There is, accordingly, no basis for a claim of abuse of discretion as to the trial judge's factual determination that the event was known to defense counsel during trial but was not brought to the court's attention. *See Inman v. State*, 2012 WY 107, ¶ 13, 281 P.3d 745, 748 (Wyo. 2012) ("Determining whether the trial court abused its discretion involves the consideration of whether the court could reasonably conclude as it did, and whether it acted in an arbitrary or capricious manner." (quoting *Lancaster v. State*, 2002 WY 45, ¶ 11, 43 P.3d 80, 87 (Wyo. 2002))); *Flaim*, 488 P.2d at 154 n.2 (explaining how a trial court is free to accept or reject testimony as part of its discretion to grant or deny a motion for a new trial); *Hanson*, 23 Wyo. at 450, 153 P. at 900 ("[T]his circumstance was known to appellant at the time of its occurrence, and no objection was made; and he could not thus remain quiet and take the chance of a favorable verdict, and keep this point in reserve." (quoting *Monaghan v. Pac. Rolling Mill Co.*, 22 P. 590, 591–92 (Cal. 1889))).

## CONCLUSION

[¶54] The jury heard evidence sufficient to establish beyond a reasonable doubt that Mr. Peña took the truck in question with the requisite intent to deprive its owner of his property. The district court correctly concluded that any challenge based on the jury's exposure to improper information was waived because it could have been raised at trial and was not. Affirmed.