STATE of Missouri, Plaintiff–Respondent,

v.

Don L. BROCKMAN, Defendant–Appellant.

No. 23166.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 24, 2000.

Motion for Rehearing or Transfer Denied Nov. 15, 2000.

Amy M. Bartholow, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stacy L. Anderson, Asst. Atty. Gen., Jefferson City, for respondent.

PHILLIP R. GARRISON, Judge.

Don L. Brockman ("Defendant") was charged by amended information as an accomplice to the manufacture of methamphetamine in violation of Section 195.211.[1] A jury found Defendant guilty, and he was sentenced to seven years imprisonment. He appeals his conviction asserting that the trial court erred in overruling his motions for judgment of acquittal and in sentencing him.

■ As Defendant contests the sufficiency of the evidence supporting his conviction, appellate "review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998), *cert. denied*, 525 U.S. 1021, 119 S.Ct. 551, 142 L.Ed.2d 458 (1998). In applying this standard, the Court accepts as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregards all evidence to the contrary. *Id.* Viewed in this light, the evidence most favorable to the verdict shows:

On March 16, 1998, DEA Officer Tony Pellecchia ("Officer Pellecchia") was looking for Jeannie Bower ("Bower"). A confidential source had indicated to Officer Pellecchia that Bower would be present at a home in Springfield, Missouri and that there might be a methamphetamine lab there. The confidential source also indicated that a "Don" and "Sandra" lived there. Officer Pellecchia called Corporal Mark Deeds ("Corporal Deeds") of the Springfield Police Department to see if he had further information on the last names of "Don" and "Sandra." Corporal Deeds identified "Don" as Defendant and "Sandra" as Sandra Sutton ("Sutton"), Defendant's girlfriend. The owner of the home was Sutton, and Defendant stayed there on occasion.

At approximately 5 p.m. on March 16, Officer Pellecchia, Corporal Deeds, and two other police officers went to the home. Officer Pellecchia met Sutton, Virginia Ruble ("Ruble"), and Defendant on the porch. Officer Pellecchia asked if Bower was in the house, and all three denied knowledge of Bower, or her presence in the home. Sutton and Defendant gave the officers permission to search the house. Officer Pellecchia found Bower inside the house.

While Officer Pellecchia was speaking with Bower, one of the other officers came around to the front of the house and told him that he had seen some "lab trash" in the backyard, and a small propane tank in a Dodge minivan in the driveway. Officer Pellecchia went around to the driveway and observed three vehicles, a red Dodge minivan, a tan Toronado, and a full-sized Ford van, parked there. According to Officer Pellecchia, Defendant initially stated that the Toronado was his, and granted

---

1. All statutory references are to RSMo Cum. Supp.1999, unless otherwise indicated.

permission to search it. However, as they were walking toward the car, Defendant stated that he was just thinking about buying it, or that he was going to buy it if it would run. The hood on the Toronado was raised up, as if it was not working.

Officer Pellecchia searched the Toronado. The car had a very strong chemical odor that Officer Pellecchia recognized from methamphetamine labs. On the back seat floorboard, there was a bag, which contained a bag of rock salt, a gallon jug of drain cleaner, coffee filters, and a glass jar with a lid. Officer Pellecchia removed the lid from the glass jar and smelled a strong odor of ether, which he recognized as an indicator of manufactured methamphetamine. The substance in the jar was later tested and determined to be methamphetamine.

Officer Pellecchia also searched the Dodge minivan. As he approached the side door of the vehicle, which was partially open, he smelled a strong chemical odor that he recognized as anhydrous ammonia, an ingredient used in the manufacture of methamphetamine. Inside the minivan, he found a small tank and a box containing some tubing and jars. The bluish-colored fitting on top of the tank indicated to Officer Pellecchia that anhydrous ammonia was present at one time in the tank, and he observed that some of the jars had residue in them.

The officers ran a check on both the Toronado and the minivan and found that neither of the vehicles was registered in Defendant's name. After searching the two vehicles, the officers went around to the back of the house. On the ground, next to the rear entrance of the house and near the trash, was a two-liter Coke bottle with half-melted rock salt in it and a tube coming out of it. Based on his training and experience, Officer Pellecchia recognized it to be an acid generator, which would be used to finish the production process in a methamphetamine laboratory. The officers also found a can of ether with a hole punched in it. The officers believed they had found the remains of a once-active, but now non-operational methamphetamine lab. Officer Pellecchia believed that methamphetamine had been manufactured in the home because an acid generator is used in the last portion of changing methamphetamine base into the final product, and that process is not typically done inside of a car because it would burn the manufacturer's lungs and take all of the oxygen from the air. He also believed that the acid generator had probably continued to emit gas within the last twelve hours.

At trial, defense counsel moved for a judgment of acquittal at the close of the State's case and at the close of all of the evidence. The trial court overruled these motions, and a jury found Defendant guilty. Defendant appeals.

■ In his sole point on appeal, Defendant contends that the trial court erred in overruling his motions for judgment of acquittal and in sentencing him upon his conviction for being an accomplice to the manufacture of methamphetamine as the State did not present evidence from which a "rational fact finder could have found beyond a reasonable doubt that [Defendant], 'aided or encouraged' other persons in committing the offense of manufacturing methamphetamine."

■ Under the theory of aiding and abetting, a person is criminally responsible for the conduct of another if, with the purpose of promoting the commission of an offense, he aids, agrees to aid, or attempts to aid the other person in planning, committing, or attempting to commit the offense. § 562.041.1(2), RSMo 1994; *State v. Sensabaugh*, 9 S.W.3d 677, 679 (Mo.App. E.D.1999). "The law imputes to [the defendant] the criminal agency of his accomplices. A person who acts with another with a common intent and purpose in the commission of a crime is guilty, whether he is a principal or merely aids and abets the crime. *State v. Edgar*, 2 S.W.3d 896, 898 (Mo.App. W.D.1999)."

In the instant case, the State submitted a verdict-directing instruction which required that the jury find: (1) Defendant, or other persons, manufactured methamphetamine, a controlled substance, by extraction and chemical synthesis; (2) Defendant knew or was aware that the substance he or other persons manufactured was methamphetamine; and (3) Defendant promoted or furthered the commission of the offense by aiding or encouraging the other persons in committing the offense. The jury instruction was patterned after MAI–CR 3d 304.04 (9–1–99), as modified by MAI–CR 3d 325.06 (10–1–98).

The State's theory was that it was reasonable to infer that Defendant was guilty of being an accomplice to the manufacture of methamphetamine due to his association with others involved in the crime and his constructive possession of the home and the Toronado. The evidence, however, indicates only that Defendant was present at Sutton's home, that he stayed at the home on occasion, that he was thinking about buying the Toronado if it would run, and that he was acquainted with Sutton, Ruble, and Bower. There was no evidence that Defendant promoted or furthered the commission of the offense by encouraging other persons in committing that offense. When a defendant encourages another, he or she must be more than merely present at the scene of the crime. *State v. Richardson,* 923 S.W.2d 301, 318 (Mo. banc 1996), *cert. denied,* 519 U.S. 972, 117 S.Ct. 403, 136 L.Ed.2d 317 (1996). "[E]ncouraged" indicates a "sufficiently active role in the criminal act such that criminal liability may validly be imposed; it is the equivalent of conduct that 'by any means countenances or approves' the criminal actions of another, thereby warranting that the actor in law be 'deemed an aider and abettor, and liable as a principal.'" *Id.* (quoting *State v. Stidham,* 305 S.W.2d 7, 15 (Mo. 1957)). At trial, Corporal Deeds testified that he did not know if methamphetamine had been manufactured at the home, or if so, whether Defendant was present at the time or had participated in any steps of the manufacturing process. When asked "[w]hat exactly did [Defendant] do to assist anyone else that day in manufacturing methamphetamine," Corporal Deeds responded, "I don't know." He also testified that there was no contraband found upon Defendant's person, that there was no "lab equipment" found inside the home, and that neither the Toronado nor the minivan could be traced back to Defendant.

The evidence presented fails to show that Defendant took a sufficiently active role in the manufacture of methamphetamine such that criminal liability under Section 195.211 may validly be imposed. Therefore, the trial court erred in submitting the case to the jury and overruling Defendant's motions for judgment of acquittal.

The judgment of conviction is reversed and the case remanded with instructions that the trial court enter a judgment of acquittal and order Defendant discharged.

CROW, J., and BARNEY, C.J., concur.