# IN THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 86

APRIL TERM, A.D. 2022

July 6, 2022

CALEB LEVI BEESON,

Appellant
(Defendant),

v.

S-21-0188

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Goshen County*
*The Honorable Patrick W. Korell Judge*

*Representing Appellant:*
> Donna D. Domonkos, Domonkos Law Office, LLC, Cheyenne, Wyoming.

*Representing Appellee:*
> Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Timothy P. Zintak, Assistant Attorney General.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that corrections may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]    Caleb Levi Beeson pled guilty to one count of misdemeanor stalking and one count of strangulation of a household member. At the change of plea hearing, Mr. Beeson did not give detailed answers when asked about the factual basis for the counts, instead providing "yes" answers to the questions of counsel and the court. The district court found there was a factual basis for both counts and accepted his guilty plea. Mr. Beeson appealed, claiming there was not a factual basis for either count. We affirm.

## ISSUE

[¶2]    The sole issue is whether Mr. Beeson gave a sufficient factual basis to support his guilty plea.

## FACTS

[¶3]    The State originally charged Mr. Beeson with ten counts but agreed to dismiss all except Counts I and II pursuant to a plea deal. Count I alleged Mr. Beeson stalked KW between January 1, 2020, and September 1, 2020. Count II alleged Mr. Beeson strangled SB between August 1, 2018, and October 31, 2018. At the change of plea hearing, Mr. Beeson's attorney questioned him.

> Q. Mr. Beeson, were you in Goshen County, Wyoming, between the dates of January 1 of 2020, and September 1 of 2020?
>
> A. Yes, sir.
>
> Q. And at that point in time or at some time during those dates did you engage in a course of conduct that involved sending emails and contact through social media with a former girlfriend?
>
> A. Yes, sir.
>
> Q. And was that former girlfriend [KW]?
>
> A. Yes, sir.
>
>             *    *    *
>
> Q. And was this course of conduct with contact by social media and email reasonably likely to cause her emotional distress?

1

A. Yes, sir.

Q. And was that the course of conduct that you voluntarily took?

A. Yes, sir.

Q. Okay. Between the dates of August 1 of 2018, and October 31 of 2018, were you in Goshen County, Wyoming?

A. Yes, sir.

Q. And at that point in time were you in a dating relationship with a person by the name of [SB]?

A. Yes, sir.

Q. And during those dates did you have an altercation with her?

A. Yes, sir.

Q. And during that altercation did you impede her normal breathing and circulation of blood by applying pressure to her throat or neck?

A. Yes, sir.

Q. And was that a voluntary action by you?

A. Yes, sir.

\* \* \*

Q. So going back to the communications between you and your former girlfriend through social media and emails, text messages, were those messages done in such a way to cause her emotional distress?

A. Yes, sir.

Q. And reasonably likely to cause her emotional distress because you guys were broken up at that point in time; correct?

A. Yes, sir.

Q. And she had asked that you not contact her?

A. Yes, sir.

Q. And you continued to contact her through the social media?

A. Yes, sir.

Q. And some of those text messages and social media exchanges were designed to manipulate her behavior in some way; correct?

A. Yes, sir.

[¶4]    The court then questioned Mr. Beeson about Count II.

A: Yeah. I did place my hand or her neck or throat to keep her from yelling or screaming.

Q: Okay. And did you do so in such a way that it caused some impairment of her breathing or blood flow?

A: I believe so.

Q: Very good. And this was a disagreement you were having or –

A: Yes, sir.

Q: All right. Very good. Mr. Beeson, back to Count I. I just want to make sure that I understand that as well. The allegations are that there were some emails and some pictures, you have admitted some social media. The state alleges that there were some threats or implied threats in that or the content of those were in such a manner that might have been disturbing. Can you tell me, were there any threats or any disturbing posts that you had on social media or contact through social media?

A: Yes, sir.

Q: Can you tell me what those would be?

A: I -- I made a promise to [KW] that I would never quote-unquote burn her in her like job and everything and then I turned around and said that I would, but I made a promise and I always keep my promises so it was kind of just a white lie just to manipulate her.

\* \* \*

Q: Mr. Beeson, let me just ask you one more question. The type of conduct that you engaged in, was there more than one incident that we are talking about?

A: Yes, sir.

[¶5]   The court found there was a factual basis for both counts and accepted Mr. Beeson's plea. It sentenced Mr. Beeson to serve six months in the Goshen County Detention Center for Count I and four-and-a-half to seven years at a state penal institution under the discretion and supervision of the Wyoming Department of Corrections for Count II, to run consecutively. Mr. Beeson timely appealed.

### *STANDARD OF REVIEW*

[¶6]   Mr. Beeson argues there was not a sufficient factual basis for the district court to accept his guilty plea. However, Mr. Beeson did not move to withdraw his guilty plea or otherwise object to the sufficiency of the factual basis before the district court. We therefore review for plain error. *Nguyen v. State*, 2013 WY 50 ¶ 10, 299 P.3d 683, 686 (Wyo. 2013). "Plain error exists if the alleged error: (1) clearly appears in the record; (2) clearly and obviously violates a clear and unequivocal rule of law; and (3) affects a defendant's substantial right to his material prejudice. Failure to establish each element ... precludes a finding of plain error." *Leners v. State*, 2021 WY 67, ¶ 23, 486 P.3d 1013, 1018 (Wyo. 2021) (cleaned up).

### *DISCUSSION*

[¶7]   W.R.Cr.P. 11 governs guilty pleas. Subsection (f) states, "Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." W.R.Cr.P. 11(f). "We test for a sufficient factual basis under W.R.Cr.P. 11(f) by comparing the elements of the charged offense to the facts admitted by the defendant and inferences arising from those facts." *Mellott v. State*, 2019 WY 23, ¶ 28, 435 P.3d 376, 386 (Wyo. 2019) (citing *Nguyen*, 2013 WY 50, ¶ 13, 299 P.3d at 687). "[T]he factual basis for

4

accepting a plea may be inferred from circumstances surrounding the crime and need not be established only from the defendant's statements. W.R.Cr.P. 11 does not require proof beyond a reasonable doubt that a defendant who pleads guilty is actually guilty nor does it require complete descriptions of the elements." *Reid v. State*, 2021 WY 121, ¶ 12, 497 P.3d 464, 466 (Wyo. 2021) (quoting *Nguyen*, 2013 WY 50, ¶ 11, 299 P.3d at 686).

[¶8]    The purpose of the factual basis requirement is "to prevent the individual charged with a crime from being misled into a waiver of substantial rights." *Williams v. State*, 2015 WY 100, ¶ 21, 354 P.3d 954, 962 (Wyo. 2016) (quoting *Nguyen*, 2013 WY 50, ¶ 11, 299 P.3d at 686). The factual basis inquiry protects "a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *Id.* (quoting *Van Haele v. State*, 2004 WY 59, ¶ 13, 90 P.3d 708, 712 (Wyo. 2004)). "A sufficient inquiry includes a determination that the defendant understood his conduct, in light of the law, to be criminal." *Sami v. State*, 2004 WY 23, ¶ 9, 85 P.3d 1014, 1017 (Wyo. 2004) (citing *Barnes v. State*, 951 P.2d 386, 389 (Wyo. 1998)).

> There is no requirement that in order to rely on a defendant's answer in a guilty-plea colloquy to conclude that the defendant pleaded guilty knowingly and voluntarily, those answers must be lengthy and all-encompassing; a straightforward and simple 'Yes, your Honor' is sufficient to bind a defendant to its consequences. *United States v. Gardner*, 417 F.3d 541, 544 (6th Cir. 2005));

*United States v. Torrellas*, 455 F.3d 96, 103 (2d Cir. 2006); *see also United States v. James*, 701 F.App'x 686, 689 (10th Cir. 2017). As long as the defendant understands the substance of the questions and the nature of the charge, yes-and-no answers are sufficient to establish a factual basis. *Id.* at 103-04 (citing *United States v. Rodriguez-Leon*, 402 F.3d 17, 25 n.8 (1st Cir. 2005)); *see also Reyna v. State*, 2001 WY 105, ¶ 13, 33 P.3d 1129, 1133 (Wyo. 2001) (holding the defendant's "Yes" answer to a question was sufficient to establish an element of the crime he was charged with).[1]

[¶9]    Mr. Beeson claims there was not a sufficient factual basis for the district court to accept his plea on both counts. Because we have a transcript of the factual basis Mr. Beeson

---

[1] A "yes" answer may be insufficient to establish a factual basis when it is unclear that the "yes" refers to an element of the crime. *See, e.g., Rhoades v. State*, 848 N.W.2d 22, 29-30 (Iowa 2014) ("yes" answer to the question "did you have intimate contact with the victim" insufficient because "intimate contact" requires an exchange of bodily fluids and it was not established that the defendant exchanged bodily fluids); *Ryan v. Iowa State Penitentiary*, 218 N.W.2d 616, 618 (Iowa 1974) ("yes" answer to "did you commit the crimes you're charged with?" was insufficient); *United States v. Carr*, 271 F.3d 172, 179-80 (4th Cir. 2001) ("yes" answer was not sufficient because the court asked four questions in a row and it was not clear which question the defendant was answering "yes" to, so an element was not established).

5

provided, the alleged error clearly appears in the record. The first prong of plain error has therefore been met, and we turn to the other two prongs for each count to which Mr. Beeson pled.

### I. *There was a sufficient factual basis for the district court to accept Mr. Beeson's guilty plea to stalking because his intent to harass can be inferred from his conduct.*

[¶10]  Mr. Beeson argues there was not a sufficient factual basis for the court to accept his guilty plea to stalking because it was not established that he intended to harass KW. He contends his statements only demonstrate that he was trying to give her a better understanding of him and his bipolar disorder. He also argues there was not a factual basis because it was not established that his conduct occurred in Goshen County.

[¶11]  The crime of stalking is defined as:

> (b) Unless otherwise provided by law, a person commits the crime of stalking if, with intent to harass another person, the person engages in a course of conduct reasonably likely to harass that person, including but not limited to any combination of the following:
>
> > (i) Communicating, anonymously or otherwise, or causing a communication with another person by verbal, electronic, mechanical, telegraphic, telephonic or written means in a manner that harasses[.]

Wyo. Stat. Ann. § 6-2-506(b)(i) (LexisNexis 2021).

[¶12]  "Course of conduct" is defined as "a pattern of conduct composed of a series of acts over any period of time evidencing a continuity of purpose." Wyo. Stat. Ann. § 6-2-506(a)(i). "Harass" is defined as

> (ii) "Harass" means to engage in a course of conduct, including but not limited to verbal threats, written threats, lewd or obscene statements or images, vandalism or nonconsensual physical contact, directed at a specific person that the defendant knew or should have known would cause:
>
> > (A) A reasonable person to suffer substantial emotional distress;

6

(B) A reasonable person to suffer substantial fear for their safety or the safety of another person[.]

Wyo. Stat. Ann. § 6-2-506(a)(ii)(A),(B).

[¶13]   Mr. Beeson contests only the factual basis for the element of intent, so we will focus there. Stalking requires a specific intent to harass. *Dean v. State*, 2014 WY 158, ¶ 10, 339 P.3d 509, 512 (Wyo. 2014) (citing *Luplow v. State*, 897 P.2d 463, 468 (Wyo. 1995)). "[I]t requires proof that a defendant, with the intent to harass, engaged in a course of conduct reasonably likely to harass. Specific intent to cause the particular harm may be proven by reasonable inferences from the character of the conduct and surrounding circumstances." *Id.* (citing *Leavitt v. State*, 2011 WY 11, ¶ 10, 245 P.3d 831, 833 (Wyo. 2011)). "The mind of an alleged offender may be read from his acts, his conduct, his words and the reasonable inferences which may be drawn from the circumstances of the case. To hold otherwise would create an impossible burden in a case requiring a finding of specific intent." *Bittleston v. State*, 2019 WY 64, ¶ 25, 442 P.3d 1287, 1294 (Wyo. 2019) (quoting *Jones v. State*, 2012 WY 82, ¶ 27, 278 P.3d 729, 736 (Wyo. 2012)).

[¶14]   The actions Mr. Beeson admitted to at the change of plea hearing reflect an intent to harass KW. He admitted his social media and email messages were written to cause her emotional distress and designed to manipulate her behavior. He threatened to "burn her" in her job and continued to contact her after she told him to stop. The reasonable inference that may be drawn from Mr. Beeson's behavior is an intent to harass, not merely an intent to impart some understanding of his bipolar disorder.

[¶15]   As to whether the factual basis was sufficient to establish that Mr. Beeson committed the stalking offense in Goshen County, he answered "yes" when asked if he was in Goshen County, Wyoming, between January 1 and September 1 of 2020. The State alleged Mr. Beeson stalked KW during this time period. The district court could infer from the State's allegation and Mr. Beeson's answer that he was in Goshen County when he stalked KW.

[¶16]   Mr. Beeson provided a sufficient factual basis to establish he intended to harass KW and he committed the crime in Goshen County. The district court therefore did not violate a clear and unequivocal rule of law when it accepted his guilty plea, and we do not proceed to the third prong of plain error.

**II.     *Mr. Beeson's testimony that he believed he impeded SB's breathing or blood flow when he placed his hands around her throat provided a sufficient factual basis for his guilty plea to strangulation.***

[¶17]   Mr. Beeson argues there was not a sufficient factual basis for the court to accept his guilty plea to strangulation of a household member because it was not established that he

7

impeded SB's breathing or blood circulation. He contends his answer of "I believe so" when asked if he placed his hand on her neck in a way that caused impairment of her breathing or blood flow was too vague to establish a factual basis. He also argues the factual basis did not establish that his conduct occurred in Goshen County.

[¶18]   The crime of strangulation of a household member is defined as:

> (a) A person is guilty of strangulation of a household member if he intentionally and knowingly or recklessly causes or attempts to cause bodily injury to a household member by impeding the normal breathing or circulation of blood by:
>
> (i) Applying pressure on the throat or neck of the household member[.]

Wyo. Stat. Ann. § 6-2-509(a)(i) (LexisNexis 2021). "Household member" is defined as "persons who are in, or have been in, a dating relationship." Wyo. Stat. Ann. § 35-21-102(a)(iv)(H) (LexisNexis 2021).

[¶19]   Mr. Beeson relies on *State v. Dixson*, a Missouri Court of Appeals case, to support his position that "I believe so" is too vague to establish a factual basis. In that case, the state had to show the defendant and co-defendant knew each other. 546 S.W.3d 615, 620 (Mo. Ct. App. 2018). The prosecutor asked the officer testifying whether the defendant and co-defendant knew each other, and he answered, "I believe so." *Id.* at 620 n.6. The answer drew an objection, which was sustained. *Id.* The Missouri Court of Appeals said, "That vague testimony, even if the objection had been overruled and the testimony allowed, could not be relied on to show Defendant's companionship with any of these people." *Id.*

[¶20]   Mr. Beeson's reliance on *Dixson* is misplaced. First, the officer's testimony was given at trial, where the burden of proof is beyond a reasonable doubt. That burden does not apply to a factual basis for a guilty plea. *Reid*, 2021 WY 121, ¶ 12, 497 P.3d at 466. *Dixson* can also be distinguished because the officer was testifying about events he was not involved in, and therefore his answer of "I believe so" could not establish whether the defendant and co-defendant knew each other. Here, Mr. Beeson was directly involved in the acts that would have impeded SB's breathing because he was the one strangling her. He testified that he had placed his hand on her neck or throat to stop her from yelling and screaming and believed his action impeded her breathing or blood flow. The belief to which he testified directly reflected his own understanding of the effect his actions had and was therefore sufficient to establish a factual basis.

[¶21]   As to whether the factual basis was adequate to establish that Mr. Beeson was in Goshen County when he committed the crime of strangulation, he again answered "Yes, sir." when asked if he was in Goshen County, Wyoming, between August 1 and October

8

31 of 2018. The State alleged Mr. Beeson strangled SB sometime during this timeframe, with the exact date unknown. It may be reasonably inferred from the State's allegation and Mr. Beeson's answer that he was in Goshen County when he strangled SB.

[¶22] Mr. Beeson provided a sufficient factual basis to establish he impeded SB's breathing or circulation and he did so in Goshen County. The district court therefore did not violate a clear and unequivocal rule of law when it accepted his guilty plea, and we do not proceed to the third prong of plain error.

[¶23]  Affirmed.